Negrón Soto, Juez Ponente
TEXTO COMPLETO DE LA SENTENCIA
Montblanc Garden Apartments Associates, en lo sucesivo la arrendadora, nos solicita la revisión de una resolución emitida el 17 de marzo de 1999 por el Tribunal de Primera Instancia, Sub-sección de Distrito, Sala de Yauco, mediante la cual se declaró con lugar una moción de relevo de orden de ejecución de sentencia, a tenor con la Regla 49.2 de las de Procedimiento Civil, 32 L.P.R.A. Ap. III, R. 49.2. La arrendadora presentó correctamente este recurso como uno de apelación, ya que el relevo de la ejecución de la sentencia equivalió, en las circunstancias del caso de marras, a dejar sin efecto dicha sentencia y a declarar sin lugar la demanda de desahucio. 
Luego de considerar los alegatos de las partes y examinar el expediente de instancia, el cual solicitamos se elevara ante nos, confirmamos el dictamen recurrido. Veamos los hechos pertinentes.
I
Sonia Mercado, en adelante la arrendataria, ocupa un apartamento de vivienda como inquilina en Montblanc Garden Apartments propiedad de la arrendadora desde el año 1983 junto a sus cinco hijos menores de edad. Este proyecto de arrendamiento de viviendas recibe fondos federales auspiciados por el programa de renta subsidiada regulado por la Sección 8 de la Ley Federal de Vivienda Pública, Housing and Community Development Act, 42 U.S.C. sec. 1437. Para implementar esta Ley se aprobó un reglamento titulado, Housing Assistance Payments Program For New Construction, 24 C.F.R. sec. 880.
Desde el 1983, la arrendataria ha recibido ininterrumpidamente los beneficios de renta subsidiada del Programa de la Sección 8. El 1 de agosto de 1994 y el 10 de abril de 1996, por primera vez y desde entonces, la arrendataria suscribió personalmente los contratos de arrendamiento, ya que anteriormente su esposo era quien comparecía en éstos.
*665 Posteriormente, mediante carta del 24 de enero de 1997, la arrendadora notificó su intención de cancelar dicho contrato a la arrendataria porque ésta incumplió con el mismo al no pagar la diferencia de la renta que le correspondía y al dejar de informar el cambio en sus ingresos. En comunicación del 26 de febrero de 1997, la arrendadora le notificó a la arrendataria la determinación de rescindir el contrato de arrendamiento por esas dos razones.
En estas comunicaciones, la arrendadora advirtió a la arrendataria de que conforme a la reglamentación del Departamento de la Vivienda y Desarrollo Urbano (HUD) tenía el término de diez (10) días para presentar sus comentarios o defensas o para discutir lo relativo a la rescisión del contrato. En cuanto a este aspecto, la sentencia, indica que:
“... la Sra. Sonia Mercado aceptó haber recibido las dos cartas de Montblanc Gardens [sic] Apartments fechadas 26 de febrero de 1997, una titulada “Rescisión de Arrendamiento”, donde le indicaba las cláusulas del contrato violadas y que podía acudir dentro de los próximos diez (10) días para discutir la rescisión de su contrato.

...la Sra. Sonia Mercado acudió a Montblanc Gardens [sic] Apartments a reunirse con la Sra. Mónica Batiz, Administradora, el día 4 de marzo de 1997, volviéndose a discutir nuevamente la rescisión de su contrato, y fecha en la cual se le informó que la única manera que tenía para evitar la rescisión de su contrato era que pagara la cuantía que debía. ”

Aunque la arrendataria había aceptado pagar todo lo adeudado, no lo hizo.
De otro lado, la arrendataria aduce que solicitó una reunión con la arrendadora dentro de los diez (10) días siguientes a esa notificación escrita, según requiere la referida legislación federal, para discutir la cancelación del contrato y que la misma fue denegada por la arrendadora porque el caso ya había sido referido a la división legal. Ante una certificación emitida por la administradora de la arrendadora, de donde surge que la deuda al 1ro de marzo de 1997 que tenía la arrendataria sumaba a mil ochocientos noventa y cuatro dólares ($1,894.00), el 17 de marzo de 1997, la arrendadora presentó una demanda de desahucio, en la cual alegó que ..la arrendataria incumplió el contrato al no informar ingresos y dejar de pagar la parte que le correspondía del canon de arrendamiento.
Posteriormente, mediante carta del 31 de marzo de 1997, la arrendadora notificó a la arrendataria que la renta mensual sería de veintinueve dólares ($29.00), efectivo desde el 1 de mayo de 1997. En una segunda comunicación del 1 de abril de 1999, la arrendadora indicó a la arrendataria lo siguiente:

“RE: CAMBIO DE RENTA MENSUAL Y ENMIENDA AL CONTRATO

La presente es para informarle que al día 1 de mayo de 1999, su nueva renta será de $42.00. Este cambio enmienda la clausula [sic] No. 3 de su contrato de arrendamiento firmado el 1 de mayo de 1996. Le estamos incluyendo una copia de esta carta para que proceda a firmarla de inmediato y devolverla a la oficina. El cambio de su renta antes mencionado se ha debido a lo siguiente: Recertificación anual [sicj. De necesitar usted alguna aclaración con respecto a lo antes mencionado, le agradeceremos se comunique con nuestra oficina de arrendamiento. ”

La arrendataria negó las alegaciones de la demanda. Levantó como defensas afirmativas, entre otras, que estaba cumpliendo con su obligación de pago desde la novación del contrato ocurrida en diciembre de 1996; que la deuda anterior no era exigible en este caso de desahucio; que no tenía otros recursos económicos; que no *666 se había cumplido con otros requisitos de ley, incluyendo la notificación de la demanda, y que el tribunal carecía de jurisdicción para entender en el caso, ya que la arrendadora le había violado los derechos y garantías que la ley federal de vivienda le concede. Mediante moción del 16 de mayo de 1997, solicitó que se notificara con copia de la demanda de desahucio a los Secretarios del Departamento de Servicios Sociales y del Departamento de la Vivienda, conforme a lo dispuesto en el Artículo 623 del Código de Enjuiciamiento Civil, 32 L.P.R.A. sec. 2824, el cual luego de ordenar la celebración de una vista "... dentro de los diez (10) días siguientes a aquél en que se presente la reclamación”, estatuye que:
"... si en dicha vista quedare demostrado que el mandamiento es contra una familia de probada insolvencia económica, el Tribunal ordenará que se notifique a los Secretarios de los Departamentos de Familia y de la Vivienda, con copia de la demanda de desahucio promovida. Estas agencias evaluarán la condición socioeconómica de la familia y le brindarán la ayuda social que esté justificada.

Además, rendirán un informe al Tribunal en el término improrrogable de treinta (30) días sobre las ayudas a que la familia tenga derecho, y cuáles se habrán de proveer. ”

El 29 de mayo de 1997, el Tribunal apelado concedió dicha solicitud.
Luego de varios incidentes procesales y de la celebración de la vista en su fondo, el Tribunal a quo dictó sentencia de desahucio el 26 de octubre de 1998, la cual fue archivada en autos y, notificada el día 30 siguiente. Esta no fue apelada, por lo que advino final y firme el 30 de noviembre de ese año. La arrendadora solicitó el lanzamiento de la arrendataria el 15 de enero de 1999, el cual fue ordenado por el Foro de instancia el 2 de febrero siguiente.
La arrendataria solicitó el relevo de esa orden de ejecución de sentencia al amparo de la Regla 49.2 de las de Procedimiento Civil el 15 de marzo de 1999, o sea antes de transcurrir el término de seis (6) meses dispuesto en ese estatuto. Aunque en esta moción la arrendataria en su título y súplica básicamente se refirió a la orden de ejecución, en el cuerpo de la misma planteó la nulidad de la sentencia al referirse a la falta de notificación de distintas partes a tenor con varias disposiciones de la ley y reglamentación federal y finalmente al discutir que como la demandante había sostenido y declarado "... de haber pagado la inquilina-apelante no hubiera ningún caso”, página 16, estaba procediendo a consignar lo adeudado. A esos efectos, solicitó en la súplica que, además del relevo de la ejecución de la sentencia y otros aspectos relativos al lanzamiento, el Foro de instancia ordenara “... cualquier otro remedio que proteja el interés y derecho de la parte demandada”, página 19. En cumplimiento con lo allí indicado puso... “a disposición de la demandante el saldo total de...” página 10, lo adeudado mediante un giro postal por la suma de mil setecientos noventa dólares ($1,790.00) emitido por el Banco Popular. Aunque sometió copia de dicho giro con su moción, no indicó cuál fue su destino. El Foro recurrido no hizo ninguna determinación sobre este aspecto.
Inconforme, la arrendadora acude ante nos imputándole como error al tribunal de instancia haber declarado con lugar dicha moción de relevo de ejecución de sentencia, bajo la Regla 49.2 de las de Procedimiento Civil. Examinemos las normas de derecho aplicables.
II
La ley Federal Housing and Community Development Act of 1974, fue aprobada con el propósito de proveer vivienda adecuada a familias de escasos recursos. Turabo Ltd. Partnership v. Velardo Ortiz, 130 D.P.R. 226, 242 (1992). Este estatuto creó un plan de rentas subsidiadas para personas de escasos recursos, conocida comúnmente como el Programa de la Sección 8, mediante el cual los caseros participantes alquilan sus viviendas a inquilinos de ingresos bajos que pagan por concepto de renta una suma que no excede un *667 porciento de sus ingresos. El Gobierno federal subsidia a los arrendatarios, pagándole directamente al casero la porción remanente de la renta en el mercado. Mora Dev. Corp. v. Sandín, 118 D.P.R. 733, 738 (1987); 42 U.S.C. sec. 1437f (b) y (c); 24 C.F.R. sec. 880, 101 (b) (1987).
Las entidades que participan de este programa se comprometen a cumplir con un gran número dreglamentos y estatutos los cuales delimitan en cierta medida sus derechos como propietarios en áreas que cubren desde la selección de los arrendatarios hasta el desahucio de éstos. Mora Dev. Corp v. Sandín, supra, pág. 739; 42 U.S.C. sec. 1437 f (d) (1987). A cambio de ésto, reciben un sinnúmero de beneficios (HUD), como, por ejemplo, el pago directo del subsidio, una garantía de la renta de mercado en caso de incumplimiento del arrendatario e inclusive, en ciertas circunstancias, HUD puede satisfacer los cánones de viviendas desocupadas. Turabo Ltd. Partnership v. Velardo Ortiz, supra, pág. 242; 1 C.F.R. secs. 504, 611 (1992).
De los documentos presentados por las partes en el caso de autos, que incluyen los contratos de arrendamiento, surge claramente la estrecha vinculación e interés de las agencias federales en todos los contratos y trámites relacionados con el Programa de la Sección 8. Por ello, en el caso ante nos se debe determinar si de acuerdo con el contrato firmado entre las partes y las reglas y reglamentos federales la arrendadora cumplió con los trámites necesarios para su terminación. A esos efectos, el contrato en su párrafo veinticuatro (24) establece los siguientes requisitos para su rescisión:
“c. Si el Arrendador se propone rescindir este Contrato, el Arrendador se compromete a dar al , Arrendatario aviso escrito de la rescisión propuesta. Si el Arrendador está rescindiendo el Contrato por “otra , causa deficiente”, el Arrendatario debe recibir el aviso de rescisión al menos treinta (30) días antes de la ' fecha en que se exigirá al Arrendatario desocupar la unidad. Los avisos de rescisión propuestos por -otras razones deben darse de acuerdo a los períodos establecidos en las leyes del Estado y las leyes locales. Cualquier aviso de rescisión debe cumplirse concurrentemente con cualquier aviso requerido por las leyes del Estado o leyes locales.

Todos los avisos de rescisión deben:

“(1) especificar la fecha en que este contrato se rescindirá;

(2) establecer los fundamentos para la rescisión con suficiente detalle para que el Arrendatario prepare su defensa;

(3) informar al Arrendatario de que tiene diez (10) días para discutir con el Arrendador la rescisión del Contrato propuesta. El período de diez (10) días comenzará la fecha en que el aviso se lleve por mensajero a la unidad o al día siguiente a la fecha en que el aviso se despache por correo, lo que ocurra primero. Si el Arrendatario solicita la reunión, el Arrendador se compromete a discutir la rescisión propuesta con el Arrendatario; e

(4) informar al Arrendatario de su derecho de defenderse de la acción en un juzgado. ”

Estos requisitos también han quedado establecidos por las agencias administrativas pertinentes en sus reglamentos y formularios promulgados según han sido enmendados por el Departamento de la Vivienda Federal, para implementar el Programa de la Sección 8 y la contratación de las agencias federales o locales con los dueños de propiedades de alquiler y de éstos con los inquilinos o beneficiarios de ese plan. Asi, el formulario HUD-52641 del 6/98, Housing Assistance Payments Contract, Section 8, Tenant-Based Assistance *668 Rental Voucher Program, en su apartado siete (7), sobre la terminación del contrato entre la agencia gubernamental y el dueño, indica lo siguiente:
“7. Termination of Tenancy by Owner

a. The owner may only terminate the tenancy in accordance with the lease and HUD requirements.

b. The owner may only evict the tenant by a court action.

c. At or before the beginning of a court action to evict the tenant, the owner must give the tenant a notice that specifies the grounds for termination of tenancy. The notice may be included in or combined with any owner eviction notice.

d. The owner must give the HA a copy of any owner eviction notice at the same time the owner notifies the tenant.

e. Eviction notice means a notice to vacate, or a complaint or other initial pleading used to begin an eviction action under State or local law. ”

Asimismo lo exige el modelo de contrato que aparece en el Handbook de HUD, Núm. 7420.8 de septiembre de 1993, según enmendado, el cual en el Apéndice 18, Sección 1.9, pág. 10, estatuye lo siguiente:

“Lease and Termination of Tenancy

B. Termination of Tenancy. The owner may not terminate tenancy or evict the Family except in accordance with HUD requirements. The HUD requirements for termination of tenancy in effect at execution of this Contract are stated in Exhibit C to this Contract. (These requirements are subject to change during the term of the Contract). The Owner must notify the PHA 
 in writing of the commencement of procedures for termination of tenancy, when the Owner gives notice to the tenant. ”

Similar cláusula existe en el contrato de PHA que aparece en el Apéndice 5, Sección 9 (B), pág. 7, y en el Apéndice 6, Sección 9 (B), pág. 8 del Handbook de HUD número 7420.8, según enmendado, que establece:

“The Owner may evict the Family from the Space only by instituing a court action. The Owner must notify the PHA in writing of the commencement of procedure for termination of tenancy, at the same time that the Owner gives notice to the Family under State or local law. The notice to the PHA may be given by furnishing to the PHA a copy of the notice to the Family. ”

Referente a estos requisitos, en Bucaré Management Corporation v. Ortiz Serrano, supra, págs. 6-7, por voz del compañero Juez, señor Segarra Olivero, este Foro apelativo señaló lo siguiente:

En cuanto a los requisitos procesales mínimos que los arrendadores deben cumplir antes de instar un procedimiento judicial de desahucio contra el arrendatario, la See. 5 del Manual 4350.3, dispone que:

El arrendatario “deberá ser notificado por escrito de la resolución y desalojo propuesto, informándole específicamente: (1) la fecha en que el contrato habrá de terminar; (2) las razones en que se funda su decisión *669 'con suficiente detalle para que la arrendatario prepare una defensa'; (3) instruirle que tiene a su disposición el término de diez (10) días para discutir la rescisión propuesta; y (4) de su derecho a defenderse en los tribunales”. Después de cumplir este trámite podrá instarse la acción judicial de desahucio fundada exclusivamente en las razones notificadas. Manual 4350.3, See. 5, según citado en Turabo Limited Partnership v. Velardo Ortiz, supra, a la pág. 9380.
Por su parte, la reglamentación que gobierna la renta subsidiada de vivienda bajo la Sección 8 tiene una disposición sobre el requisito de notificación a la agencia de vivienda pública en los casos en que el arrendador inste un procedimiento de desahucio contra el inquilino. Así, en el 24 C.F.R. see. 882.215 (c) (4) se dispone, eu cuanto a la terminación de los contratos de arrendamiento otorgados en o antes del 1 de octubre de 1981, lo siguiente:

“(4) The Owner may evict the tenant from the unit, only by instituting a court action. The Owner must notify the PHA in writing of the commencement of procedures for termination of tenancy, at the same that the Owner gives notice to the tenant under State or local law. The notice to the PHA may be given by furnishing to the PHA a copy of the notice to the tenant. ”

El término “public housing agency” (PHA) está definido en 42 U.S.C. sec. 1437 a (b) (6), como cualquier estado, país, municipalidad, u otra entidad gubernamental o pública (o agencia o instrumentalidad) la cual esté autorizada a participar en o asistir en el desarrollo u operación de viviendas para familias de bajos ingresos. (Traducción nuestra.) 
En fin, de lo antes expuesto se desprende que las notificaciones a PHA, HUD y HA, esta última como agencia de vivienda contratante con el arrendador, tienen que hacerse por escrito. Véase, el Handbook de HUD, Núm. 7420.8, Apéndice 29, Sección 19, pág. 3; y el Apéndice 18, Sección 1.25, pág. 17.
De otro lado, el formulario HUD-52641-L (6/98) titulado Model Lease for Voucher Tenancy, Section 8, Tenant-Based Assistance Rental Voucher Program, en su apartado siete (7) sostiene que para que el dueño pueda dar por terminado el contrato de arrendamiento con el inquilino, tiene que hacerlo de acuerdo con los requisitos de HUD. Su párrafo diecisiete (17), también dispone claramente que toda notificación entre las partes tiene que ser por escrito. 
En las cartas del 26 de febrero de 1997, sobre rescisión de arrendamiento, no se especifica la fecha en que el contrato se rescindiría ni se advirtió al arrendatario del derecho de defenderse de la acción en un juzgado. Menos aún se indica que FmHA ó HUD hubieran sido notificadas de que la arrendataria omitió informar ingresos y dejó de pagar el remanente de los cánones de arrendamiento, según se sostenía en dicha carta, como tampoco de los cambios en el contrato o la certificación o recertificación de su elegibilidad y del comienzo del trámite de rescisión del contrato de arrendamiento. O sea, que la arrendadora nunca notificó a las agencias de vivienda pública federal, FmHA y HUD, por escrito de esos hechos ni con copia de las cartas del 26 de febrero de 1997, sobre la revocación del arrendamiento, ni de la presentación de la demanda de desahucio en contra de la arrendataria. Estas agencias tenían que ser notificadas de los incumplimientos de la arrendataria que afectaban al Programa de la Sección 8, con anterioridad a tomarse la determinación de rescindir el contrato para cumplir con los requisitos de ley.
De otro lado, el arrendador tenía que notificar de su decisión de rescindir dicho contrato a la Agencia de Vivienda Pública, en este caso el Departamento de la Vivienda. A estos efectos, en Bucaré Management *670 Corporation v. Ortiz Serrano, supra, págs. 9-10, expresamos que:

“La agencia de vivienda pública tiene que tener “conocimiento de que en caso de que proceda el desahucio, la agencia no continuará realizando los pagos al arrendador en representación de ese arrendatario en específico. En adición, la agencia de vivienda pública debe tener conocimiento del procedimiento instado contra el arrendatario para asegurarse que se ha cumplido con los requisitos provistos en la ley, el reglamento y el contrato y pueda intervenir de estimarlo necesario. El interés preeminente de la agencia de vivienda pública es proteger a los inquilinos, toda vez que el propósito de la legislación aprobada por el Congreso federal fue proveerle asistencia de vivienda a los más necesitados.

La falta de notificación de la arrendadora, a la agencia de vivienda pública sobre la presentación de una demanda de desahucio contra la arrendataria, tuvo el efecto práctico y jurídico de excluir del pleito a una parte indispensable sin cuya presencia no debió el Tribunal de Primera Instancia hacer adjudicación alguna. Es claramente aplicable a la situación de autos, las disposiciones de la Regla 16.1 de Procedimiento Civil, 32 L.P.R.A. Ap. III, R. 16, que versa sobre la necesidad de hacer partes y acumular como demandantes o demandadas, según corresponda, a las personas que tuvieren un interés común sin cuya presencia no puede adjudicarse una controversia.

El término “parte indispensable” ha sido definido como “aquella persona cuyos derechos e intereses podrían quedar destruidos o inevitablemente afectados por una sentencia dictada estando esa persona ausente del litigio”. Torres v. Aponte, _ D.P.R. _ (1994), 94 J.T.S. 12, pág. 11496, citando a Cepeda Torres v. García Ortiz, 132 D.P.R. 698 (1993), y a Fuentes v. Tribunal de Distrito, 73 D.P.R. 959, 981 (1952).
Por imperativo constitucional, ninguna persona puede ser privada de su libertad sin un debido proceso de ley. Cepeda Torres v. García Ortiz, supra. Consecuentemente, al igual que cuando no se emplaza a una parte, cuando se viola el debido proceso de ley a una parte la sentencia es nula. Figueroa v. Banco de San Juan, 108 D.P.R. 680 (1979).
En el caso de marras, la arrendataria (demandante-apelada) no apeló de la sentencia dictada. No obstante, había levantado como defensas en su contestación a la demanda la falta del debido proceso de ley y de la notificación a las agencias de vivienda. Transcurrido el término para apelar dicha sentencia, presentó la moción al amparo de la Regla 49.2. Aunque el remedio de relevo de sentencia estatuido en la Regla 49.2 no puede servir el propósito de sustituir el trámite de apelación al que se tiene derecho, sí puede utilizarse para plantear la nulidad de una sentencia. Figueroa v. Banco de San Juan, supra, pág. 688. Específicamente, a las págs. 688-689 de este caso, se dice que:

“No obstante, siempre se ha conocido la facultad inherente del tribunal, ya sea a su propia instancia o a instancia de parte interesada o afectada, para dejar sin efecto en cualquier momento una sentencia nula u obtenida mediante fraude. Calderón Molina v. Federal Land Bank, 89 D.P.R. 704 (1963); Martínez v. Tribunal Superior, 83 D.P.R. 358 (1961); Sucn. Rosario v. Sucn. Cortijo, 83 D.P.R. 678 (1961); reconocido por la Regla 49.2 la cual dispone al respecto que:

... Esta regla no limita el poder del tribunal para (a) conocer de un pleito independiente con el propósito de relevar a una parte de una sentencia, orden o procedimiento; (b) conceder un remedio a una parte que en realidad no hubiese sido emplazada; y (c) dejar sin efecto una sentencia por motivo defraude al tribunal. ”

El esquema amplio y abarcador de remedios que provee la Regla 49.2 reduce considerablemente el ejercicio de esta acción independiente a los casos en que ha transcurrido el término fatal de seis meses y las *671 circunstancias sean de tal índole que el tribunal pueda razonablemente concluir que mantener la sentencia constituirá una grave injusticia contra una parte que no ha sido negligente en el trámite de su caso y que, además, tiene una buena defensa en los méritos.
Se admite generalmente el ejercicio de la acción independiente en casos de sentencias nulas, .ya que éstas son inexistentes. Calderón Molina v. Federal Land Bank, 89 D.P.R. 704, 708; 7 Moore, Federal Practice, sec. 60.37 (1), pág. 621; Wright & Miller, 11 Federal Practice and Procedure, 238. Una sentencia es nula cuando se ha dictado sin jurisdicción sobre la materia o las partes o, en alguna forma, infringe el debido proceso de ley. E.L.A. v. Tribunal Superior, supra, Rodríguez v. Albizu, 76 D.P.R. 631 (1954). Igualmente, procede el ejercicio de la acción independiente contra una sentencia obtenida mediante fraude, error o accidente y cuando una parte se ha visto impedida de presentar sus defensas por maquinaciones y argucias de otra parte, siempre y cuando no haya sido negligente en el trámite de su caso o haya incurrido en falta. Olivera v. Grace, 122 P.2d 564. Moore, op. cit, a las págs. 621-627; Wright & Miller, op. cit., págs. 639-645. 
Nuestro Tribunal Supremo ha expresado que no es permisible que al administrar justicia no se debe permitir que los tecnicismos en los trámites procesales nieguen a un reclamante su derecho. Srio. del Trabajo v. Mayagüez O.M. Club, 105 D.P.R. 279 (1976). Como se dice en Vda. de Rivera v. Pueblo Supermarkets, 102 D.P.R. 134, 138 (1974), citando a Travelers Indemnity Co. v. United States, 382 F.2d 103, (10th Cir. 1967): “Los fines de la justicia no se satisfacen cuando se permite la derrota de reclamaciones justas por razón de reglas técnicas. ” 
De las normas de derecho y de las disposiciones contractuales antes referidas, surge claramente que la notificación a la arrendataria tenía que cumplir con todos los requisitos impuestos por ley, los reglamentos federales y los contratos entre las partes (véase, Handbook de HUD, Apéndice 18, Sección 247.4 (a), pág. 20), lo que no se hizo; que el arrendador tenía que notificar mandatoriamente a esas dos (2) agencias federales de vivienda pública, de los incumplimientos de la arrendataria con las normas federales, lo que tampoco sucedió, y que la arrendadora tenía que notificar a la agencia federal (PHA) y a la Agencia de Vivienda, (HA), lo que no hizo, sobre su decisión de rescindir el contrato hasta luego de haberse presentado la demanda de desahucio. Ante el incumplimiento con tales requisitos, era forzoso que el Tribunal de Primera Instancia concluyera que la sentencia dictada era nula y, por consiguiente, la orden de lanzamiento no era válida. Esta determinación la tenía que hacer el Foro recurrido, aunque la demandada (arrendadora) no lo expresara con la mayor claridad en sus alegaciones. Véase, Regla 43.6 de las de Procedimiento Civil.
En resumen, en el caso de marras, concluimos que el arrendador no siguió el procedimiento de ley para notificar válidamente la terminación del contrato a la arrendataria y dejó de notificar a las agencias federales, FmHA y HUD, antes de demandar a la arrendataria en cumplimiento con las disposiciones de la reglamentación federal, por lo que violó el debido proceso de ley a que tiene derecho la arrendataria.
La notificación a los Departamentos de Servicios Sociales y de la Vivienda al comenzar el trámite para presentar la demanda de desahucio es un requisito de la reglamentación federal que cuando no se hace, como en el caso de autos, también viola el debido proceso de ley. De otro lado, la notificación de esa demanda, luego de interpuesta la acción judicial, es un requisito contemplado en varias disposiciones del Código de Enjuiciamiento Civil, requeridas en los casos de desahucios en que la familia afectada es de probada insolvencia económica. O sea, estas notificaciones son distintas a las que hay que hacer a las agencias federales y a la agencia de vivienda contratante, el Departamento de la Vivienda, anteriormente discutidas. La misma ley dispone que las agencias tienen que evaluar la condición socioeconómica de esa familia para brindarle la ayuda social que se justifique. A esos efectos, vienen obligadas a rendirle un informe al Tribunal dentro del "... término improrrogable de treinta (30) días....”. Art. 623 del Código de Enjuiciamiento Civil. En el caso de *672 marras, dicho informe no se presentó, ni las partes hicieron nada para que se cumpliera con ello. De hecho, el Artículo 635 del Código de Enjuiciamiento Civil, 32 L.P.R.A. see. 2836, también exigen a esos Departamentos darle continuidad a esos casos, brindando sus servicios a las familias afectadas luego de emitirse y ser notificados de la sentencia decretando el desahucio solicitado. Expresamente, ordena este estatuto que no se podrá verificar lanzamiento alguno sin que esté presente un funcionario del Departamento de la Familia al momento de diligenciarse el mismo. 
Ante un procedimiento claramente defectuoso e inválido, el Foro recurrido no podía ni este Tribunal puede darle curso a una sentencia que de su faz es nula y que persigue lanzar de su residencia a la arrendataria con cinco hijos menores de edad sin el debido proceso de ley. Bajo ningún concepto tal pretensión es legal y menos aún justa. 
En consecuencia, actuó correctamente el Tribunal recurrido al dejar sin efecto la ejecución del lanzamiento de la arrendataria de su residencia y, por consiguiente, la sentencia nula que había dictado. 
III
No obstante, es de rigor referimos a otros dos planteamientos que hizo la arrendataria.
En primer lugar, alega la arrendataria que no tiene ninguna deuda con la arrendadora que haya surgido con posterioridad a la fijación de la nueva renta fijada el 31 de marzo de 1997 y que el Programa de la Sección 8 ha continuado haciendo los pagos correspondientes de esos cánones. De la sentencia apelada, surge que la arrendataria tuvo unos atrasos en el pago de la parte de la renta que le correspondía, ascendentes a mil ochocientos noventa y cuatro dólares ($1,894.00), los cuales prometió pagar, pero alegadamente no pudo conseguir el dinero con su mamá, primero porque "... su hermano se negó a que su madre se los prestara” (determinación de hecho número ocho (8) de la Sentencia recurrida) y posteriormente porque se "... quedó sin trabajo... ” (minuta de la vista celebrada el 18 de agosto de 1997). No obstante, la arrendataria puso a disposición de la arrendadora o pagó la suma de mil setecientos noventa dólares ($1,790.00) mediante giro bancario, copia del cual incluyó en su moción del 15 de marzo de 1998. Fue esta moción la que dio lugar a la resolución recurrida. Del expediente de instancia surge que el Foro apelado no se expresó sobre el particular. Sin embargo, las partes en sus escritos, no mencionaron el hecho de que el contrato de arrendamiento firmado por la arrendataria el 10 de abril de 1996, en su párrafo 8 estipula que ésta entregó un depósito al arrendador de ciento siete dólares ($107.00). Esta disposición contractual dispone, en lo pertinente, que:

“El Arrendatario ha entregado en depósito al Arrendador la suma de $107.00. El Arrendador conservará este depósito de garantía durante el tiempo que el Arrendatario haya ocupado la unidad. Después que el Arrendatario haya desocupado la unidad, el Arrendador determinará si se debe reembolsar al Arrendatario parte o todo el depósito de garantía. El monto de reembolso se determinará de acuerdo a las siguientes condiciones o procedimientos... 

Ante estos hechos, de no haber sido nula la sentencia, procedía que el Tribunal de Primera Instancia determinara si de ciento cuatro dólares ($104.00), entre lo depositado y lo adeudado, correspondía a parte de esos ciento siete dólares ($107.00) o no, y entonces advertir de ello a la arrendataria y fijarle un plazo breve para que consignara la suma adeudada, si alguna. En consecuencia, en este caso en particular, las enmiendas al contrato efectuadas para ajustar la renta, unidas a que la arrendadora siempre estuvo de acuerdo en que el pago de lo adeudado era suficiente para desistir de solicitar el desalojo de la arrendataria, hacen que la determinación del Tribunal de Primera Instancia de dejar sin efecto su orden de lanzamiento se ajustara a derecho, independientemente de la nulidad de la sentencia. 
*673 F.n segundo lugar, de la prueba presentada surge que después de los alegados atrasos en la renta, por la arrendataria en que se fundamentó la demanda de desahucio, la arrendadora renovó, el. contrato de arrendamiento el 31 de marzo siguiente, para ser efectivo desde el 1 de mayo de ese año. Este hecho lo utiliza la arrendataria para alegar que hubo una novación del contrato y concluir que la arrendadora no. podía; presentar una acción de desahucio en su contra. Ciertamente, no se puede impedir el desahucio por falta de pago del remanente de unos cánones que habían sido fijados con anterioridad a la renta determinada posteriormente al considerar el cambio de los ingresos o composición familiar de la arrendataria. La renovación, del contrato a. que se refiere la arrendataria conlleva solamente la revisión de la renta en atención al ingreso y su composición-familiar y la determinación de que ella sigue siendo elegible para el Programa de la Sección 8. A esos únicos efectos, se enmienda el contrato y ello no puede afectar la deuda existente y los derechos de la arrendadora.
IV
Por los fundamentos anteriormente expresados, se confirma la resolución recurrida y se declara sin. lugar, la demanda de desahucio interpuesta por el demandante-apelante, Montblanc Garden Apartments Associates, en contra de la demandada-apelada, Sonia Mercado Caraballo.
Lo acordó el Tribunal y lo certifica la Secretaria General.
Aidalleana Oquend'oGraulau
Secretaria. General
ESCOLIOS 2000 DTA 17
1. Así, no estamos ante un procedimiento estricto posterior a la sentencia, como es la solicitud de paralización dé una orden de ejecución de sentencia, o normalmente es la resolución de una moción de relevo de sentencia bajo la Regla 49.2 de las de Procedimiento Civil en la que el recurso apropiado es el de certiorari. Neptune Packing Corp. v. Wackenhut Corp. 120 D.P.R. 283 (1988); Ex Parte Negrón Rivera, 120 D.P.R. 61 (1987); Ostalaza v. F.S.E., 116 D.P.R. 700 (1985); González v. Chávez; 103 D.P.R. 474 (1975); Además, véase, Ortiz Nieves y Otros v. Union Carbide, Inc., 99 J.T.S. 112; Banco Santander de P.R. v. Fajardo Farms Corp., 96 J.T.S. 100, Opinión Disidente del Juez Asociado Negrón García, págs. 1359-1360. Obviamente, de este recurso haber sido un certiorari, el resultado sería el mismo, ya que se hubiera expedido el auto y resuelto en los méritos.
2. Esta es un proyecto de sentencia enviado el 2 de octubre de 1998 por la arrendadora (demandante) al juez de instancia — a solicitud de éste y con copia a la arrendataria (demandada)— el cual fue adoptado en su totalidad.
3. En cuanto al desahucio, ha sido establecido que sólo puede lanzarse a un arrendatario de la propiedad arrendada por los siguientes fundamentos:
“(1) incumplimiento del contrato de arrendamiento; (2) omisión de llevar a cabo obligaciones impuestas por cualquier ley estatal sobre arrendamiento; [o por] (3) otra justa causa.” Véase, Turabo Limited Partnership v. Velardo Ortiz, supra, a la pág. 9380. Sección 5 del Manual 4350.3, Occupancy Requirements Of Subsidized Multifamily Housing; Bucaré Management Corporation v. Ortiz Serrano, Núm. KLAN-97-00664, Sentencia de 6 de mayo de 1997, pág. 5.
4. El contrato de arrendamiento vigente desde el 1 de agosto de 1994 vincula en su apartado tres (3) el de arrendamiento de la propiedad con la Farmers Home Administration (FmHA) y HUD, ya que la hipoteca que grava la misma está subsidiada por la primera y las rentas son subsidiadas por la segunda. Además, su apartado cuatro (4) sobre modificación, en la porción del canon a pagar requiere la autorización de FmHA y HUD y su párrafo diecisiete (17), relacionado, con la cancelación de la asistencia, ata esa decisión a las reglas y reglamentos de estas agencias. El apartado veintitrés (23) del contrato de arrendamiento sobre modificaciones al mismo, señala que “[ejl arrendador puede, con autorización previa de FmHA y HUD modificar los términos y condiciones de este Contrato". Igualmente, su párrafo veinticuatro (24), sobre rescisión del arrendamiento, dispone en su inciso (b) que cualquier rescisión del contrato por el Arrendador debe s.er *674 llevada a cabo de acuerdo con los reglamentos de FmHA y HUD, con las leyes del Estado y locales y con las condiciones allí impuestas.
5. La Public Housing Agency (PHA) se refiere al Housing Assistance Payments Contract, que es quien contrata con el dueño de la propiedad a arrendarse; o sea el arrendador.
6. La disposición citada en esta opinión como 24 C.F.R sec. 882.215 (c) (4), estaba vigente para el año 1995.
7. A esos efectos dice: “Any notice under this lease by the tenant to the owner or by the owner to the tenant must be in writing
8. La notificación con copia de la demanda a las agencias locales, Departamentos de la Vivienda y de Servicios Sociales, se hizo posteriormente cuando la arrendataria lo solicitó, como parte del trámite procesal de la acción judicial.
9. Véase, Banco Santander de P.R. v. Fajardo Farms Corp. supra.
10. “Rehusamos reducir a la tiesa matemática la función de administrar justicia”. Pueblo v. González Rivera, 132 D.P.R. 517, 523 (1993).
11. En atención a lo dispuesto anteriormente, no es necesario expresarnos sobre si la sentencia dictada también sería nula por razón de que dichas agencias no sometieron el informe mandatorio dispuesto en el Artículo 623 del Código de Enjuiciamiento Civil.
12. Aun cuando la sentencia no fuera nula, para expedir una orden de lanzamiento en este caso se hubiera tenido que determinar si la consignación de la suma de mil setecientos noventa dólares ($1,790.00) era válida o si se cometió algún error de buena fe o hubo alguna razón que justificara no pagar o depositar ciento cuatro dólares ($104.00) menos de la cantidad adeudada. A esos efectos, el Foro apelado hubiera tenido que advertir de ello a las partes antes de ordenar la ejecución de dicha sentencia.
13. Lo aquí resuelto no es impedimento para que la arrendadora reclame los ciento cuatro dólares ($104.00) que aparentemente le adeuda la arrendataria y si ésta no los paga de inmediato, entonces presente una acción de desahucio, siguiendo el procedimiento establecido en derecho.
14. Las condiciones allí expuestas no aplican al caso ante nos porque se refieren a cuando la arrendataria desocupa la propiedad y cumple con los requisitos allí impuestos.
15. Con anterioridad al 7 de agosto de 1998, no se podía acumular y ventilar la reclamación ordinaria en cobro de dinero como parte de la acción especial de desahucio. En virtud de la Ley Núm. 197 de esa fecha se enmendaron los Artículos 623, 628 y 635 de la Ley de Procedimientos Legales Especiales del 1993 para permitir la acumulación de las acciones en aquellos casos en que el desahucio se fundamenta en la falta de pago del canon convenido en el contrato. 32 L.P.R.A. sees. 2824, 2829 y 2836. Por ello, ante una sentencia válida decretando el desahucio por falta de pago, para esa fecha sólo se podía lanzar de la propiedad a la arrendataria, sin exigirle el pago del monto de la deuda por ese concepto.